Although plaintiffs' property damage caused by the bridge construction does not fit squarely within the above definition of a "taking," North Carolina courts have consistently held that such damage does, in fact, constitute a "taking." *Falls Sales Co. v. Board of Trans.*, 292 N.C. 437, 233 S.E. 2d 569 (1977); *Cody v. Department of Trans.*, 45 N.C. App. 471, 263 S.E. 2d 334, *disc. rev. denied*, 300 N.C. 372, 267 S.E. 2d 674 (1980). Damage to land which inevitably or necessarily flows from a public construction project results in an appropriation of land for public use. *See City of Winston-Salem v. Ferrell*, 79 N.C. App. 103, 338 S.E. 2d 794 (1986). The remedy for such property damage is an action against the Department of Transportation on the theory of condemnation. *Falls Sales Co.*, 292 N.C. at 437, 233 S.E. 2d at 569; *Cody*, 45 N.C. App. at 471, 263 S.E. 2d at 334.

Plaintiffs alleged in their complaint that Lee Construction Company, under contract with the Department of Transportation, engaged in pile driving operations which damaged their property. Plaintiffs further alleged that the damage to their property amounted to a "taking" for which they were entitled to compensation. Plaintiffs' allegations clearly state a claim in inverse condemnation against the Department of Transportation pursuant to G.S. 136-111. The trial court had subject matter jurisdiction in the case and erred in dismissing the complaint.

Reversed and remanded.

Judges PHILLIPS and COZORT concur.

———————————

J. W. ROBINSON AND WIFE, LILLIAN ROBINSON v. NORTH CAROLINA DEPARTMENT OF TRANSPORTATION AND LEE CONSTRUCTION COMPANY

No. 8713SC909

(Filed 5 April 1988)

APPEAL by plaintiffs from *Stephens, Judge.* Order entered 29 June 1987 in Superior Court, BRUNSWICK County. Heard in the Court of Appeals 11 February 1988.

In the spring of 1985, Lee Construction Company, under contract with the North Carolina Department of Transportation, began construction of a bridge across the Intracoastal Waterway to connect Holden Beach with the mainland via Highway 130. Under the terms of the construction contract, the bridge was to be supported by concrete pile foundations. Lee Construction Company drove the piles 20 to 25 feet into the ground creating vibrations in the surrounding ground. Plaintiffs' property, located on the west side of Highway 130 and adjacent to the bridge construction, suffered damage.

In their complaint, plaintiffs stated that the vibrations caused damage to a residential structure on their property. Specifically, a porch, floor coverings and sheetrock cracked, supporting piers settled, pictures fell from walls, a chandelier fell from the ceiling and floors became unlevel and unsteady. Plaintiffs informed the on-site superintendent of the damage which was occurring but Lee Construction Company continued the pile driving operations.

Plaintiffs filed this action against the Department of Transportation and Lee Construction Company alleging that they were entitled to recover damages from the Department of Transportation for inverse condemnation under G.S. 136-111 or, in the alternative, that they were entitled to recover damages from Lee Construction Company for trespass.

The Department denied plaintiffs' allegations of damages resulting from the bridge construction and moved to dismiss the action pursuant to Rule 12(b) of the North Carolina Rules of Civil Procedure. Judge Stephens granted the Department's motion and dismissed the complaint as against the Department of Transportation on the grounds that the complaint failed to state a claim for relief and that the court lacked subject matter and personal jurisdiction. From the order of the trial court, plaintiffs appeal.

*Powell and Gore, by William A. Powell, for plaintiff appellants.*

*Attorney General Lacy H. Thornburg, by Assistant Attorneys General Evelyn M. Coman and David R. Minges, for defendant appellee Department of Transportation.*

In the Matter of The Will of Jolly

ARNOLD, Judge.

For the reasons set forth in *Robinson v. N.C. Dept. of Transportation*, 89 N.C. App. 572, 366 S.E. 2d 492 (1988), we reverse the order of the superior court.

Reversed and remanded.

Judges PHILLIPS and COZORT concur.

IN THE MATTER OF THE WILL OF LILLIE C. JOLLY

No. 8717SC845

(Filed 5 April 1988)

**Wills § 11— lost or destroyed will—photostat copy—accepted as will**

    The evidence was sufficient to establish, as the jury found, that a paper writing offered for probate was the last will and testament of the propounder's aunt, that the testatrix never changed her mind about leaving her property to the propounder at her death, and that she neither destroyed her will nor intended to revoke it where the testatrix executed her last will and testament in 1977 in the office of an attorney, leaving all of her property to the propounder in fee simple; she took the original will with her when she left the lawyer's office and that was the last time it was seen; she told several relatives in the years that followed that she had willed all of her property to the propounder and implied that she had done so because he had agreed to help her as needed; the *propounder was* the testatrix's primary caretaker, making appointments for her, driving her to the doctor, dentist and hospital, managing her finances and paying her bills, often doing her grocery shopping, and frequently telephoning and visiting; the propounder arranged for another nephew of the testatrix, who was also respondent's son, to stay with the testatrix at night after the testatrix returned home from a hospitalization in 1979; testatrix never compensated propounder for his services nor expressed any disappointment with him, but stated on several occasions that she was pleased with him, the last statement being a week before her final hospitalization; the testatrix gave propounder a stack of personal papers the Thanksgiving or Christmas before she died; the photostat copy of the will offered into evidence was found among those papers after her death; the only other place the testatrix kept important papers was in a footlocker at the end of her bed; the final time the testatrix became ill, the respondent, a sister of the testatrix, was there and called the propounder to come to the house and take her to the hospital; and a search of the testatrix's home and footlocker after her death uncovered no sign of the original will.